**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                          )
BARBARA SMITH and                         )
CLARENCE GASBY,                           )
                                          )
          Plaintiffs,                     )
     v.                                   )     Civil Action No. 16-554 (RBW)
                                          )
                                          )
MARTIN J.A. YEAGER, <u>et al.</u>,        )
                                          )
          Defendants.                     )
_____)

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Barbara Smith and Clarence A. D. Gasby, initiated this action against the defendants, Martin J. A. Yeager, Land, Carroll & Blair, P.C. ("Land Carroll"), where Yeager was a principal and agent, Gregory T. Dumont, and Mid-Atlantic Commercial Law Group, LLC ("Mid-Atlantic"), where Dumont was a principal and agent, asserting a legal malpractice claim regarding the defendants' representation of the plaintiffs "in a landlord-tenant matter," (the "L and T matter") "in the Superior Court of the District of Columbia," (the "Superior Court"). Complaint and Demand for Jury Trial ("Compl.") ¶¶ 1, 8–9, 14, ECF No. 1-3. Specifically, the plaintiffs allege that the defendants breached their "duty to use [the] degree of care reasonably expected of other legal professionals with similar skills acting under the same or similar circumstances" while representing them in the L and T matter in Superior Court. <u>Id.</u> ¶ 38. Currently before the Court is the defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404 ("Defs.' Mot."), which seeks to transfer this action to the United States District Court for the Eastern District of Virginia. Upon careful consideration of the parties' submissions, the Court

concludes for the following reasons that it must deny the defendants' motion.[1]

## I.      BACKGROUND

"On February 7, 1994, the landlord for Union Station, Union Station Venture, Ltd. [("Union Station Venture"),] entered into a lease agreement [("Lease")] with La Femme Noire D.C., Incorporated [("La Femme Noire")], a District of Columbia corporation" and subsidiary of Ark Restaurants Corporation ("Ark Restaurants").  Compl. ¶ 16.  Smith, a former employee of Ark Restaurants, "signed the lease in her official capacity as an officer of [La Femme Noire]." Id.  Four years later, La Femme Noire, as part of a "deal [that] was structured as an asset sale," assigned its lease agreement with Union Station Venture to Finally Free, Inc. ("Finally Free"), "a Delaware corporation formed by the [p]laintiffs."  Id. ¶ 17.  "In or about 2007, [Union Station Venture] sold its interest in Union Station to Union Station Investco, LLC [("Union Station Investco")]."  Id. ¶ 18.  "Thereafter, [Finally Free] fell behind in the payment of the rent [and], on or about January 25, 2013, [Union Station Investco] filed the [L and T] matter" solely against La Femme Noire, "seeking possession of the premises on the grounds of the unpaid rent."  Id.

On or about February 12, 2013, La Femme Noire "retained [the defendants] to provide [it] legal services" in the L and T matter.  Defs.' P. & A. at 2.  La Femme Noire entered into a Representation Agreement (the "Agreement") with Land Carroll, which outlined the terms and conditions governing the legal services that would be provided in the L and T matter.  See generally Defs.' Exhibit ("Ex.") C (Representation Agreement ("Agreement")).  On March 21, 2013, "[u]pon information and belief [that] La Femme [Noire] ha[d] never been properly

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the defendants' Statement of Points and Authorities in Support of Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404 ("Defs.' P. & A."); (2) the Plaintiffs/Counter-Defendants' Response in Opposition to Defendants' Motion to Transfer Venue ("Pls.' Opp'n"); and (3) the defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Transfer Venue Under 28 U.S.C. § 1404 ("Defs.' Reply").

incorporated in D.C.[,] or [in] any other jurisdiction," United Station Investco "moved to amend its complaint to add [ ] Smith and [ ] Gasby to the [L and T] matter as individual [d]efendants." Compl. ¶ 20. "On April 10, 2013, in open court," the defendants provided "the assignment documents purporting to show that the Lease was assigned to [Finally Free] in 1998, but did not demonstrate that [La Femme Noire] existed at the time the [L]ease was signed or assigned." Id. ¶ 24. Consequently, Smith and Gasby "were added as defendants to the [L and T matter]." Id. The parties dispute whether Smith and Gasby became a party to the Agreement after being named as individual defendants in the L and T matter. See Counterclaim (Mar. 29, 2016) ("Countercl.") ¶ 12, ECF No. 6 (asserting that "Gasby[] orally requested that [Land Caroll] represent" the plaintiffs "pursuant to the terms of the [ ] Agreement"); see also Pls.' Opp'n at 5 (denying that such an oral agreement modifying the Agreement was ever made).

During the L and T pre-trial and trial proceedings, the defendants did "not provide any proof that [La Femme Noire] existed at any point" and "conceded that the corporation never existed." Compl. ¶ 25; see also id. ¶¶ 21–30. The L and T matter "resulted in a judgment being entered personally against [the p]laintiffs . . . on September 19, 2013," id. ¶ 14, and according to the plaintiffs, "[t]he sole basis to hold . . . Smith and Gasby liable was the mistaken belief and concession by the [d]efendants that [La Femme Noire] never existed as an entity and at all times was just a name," id. ¶ 30. Thereafter, "Smith and Gasby retained new counsel to assist them with managing various issues," who were able to "confirm[] that [La Femme Noire's] Articles of Incorporation had been filed" and therefore was a valid existing entity. Id. ¶ 32. Smith and Gasby then filed "a Rule 60 motion to vacate the judgment" in the L and T matter, id. ¶ 33, for the purpose of demonstrating "that [La Femme Noire] in fact existed at all relevant times," id. ¶ 34, and that they "were never in possession [of the premises] in their personal capacities and

therefore there was no subject matter jurisdiction as against them in the Landlord & Tenant

Branch," <u>id.</u> ¶ 33.  However, that motion was denied.  <u>See id.</u> ¶ 34.

On January 22, 2016, Smith and Gasby initiated this legal malpractice action against the

defendants in Superior Court.  <u>See</u> Compl.  The defendants then removed the plaintiffs' case to

this District pursuant to 28 U.S.C. §1441(a).  <u>See</u> Notice of Removal ¶ 5, ECF No. 1.  After the

case was removed to this Court, the defendants responded to the plaintiffs' Complaint and filed a

counterclaim for breach of contract based on the plaintiffs' failure to adhere to the terms of the

Agreement.  <u>See</u> Countercl. at 1.  The defendants now move to transfer this case to the Eastern

District of Virginia.  <u>See generally</u> Defs.' Mot.

## II.     STANDARD OF REVIEW

28 U.S.C. § 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought or to any district or division to which all parties have

consented."  28 U.S.C. § 1404(a) (2012).  The decision to transfer a case is discretionary, and a

district court must conduct "an individualized, 'factually analytical, case-by-case determination

of convenience and fairness.'"  <u>New Hope Power Co. v. U.S. Army Corps of Eng'rs</u>, 724 F.

Supp. 2d 90, 94 (D.D.C. 2010) (quoting <u>SEC v. Savoy Indus. Inc.</u>, 587 F.2d 1149, 1154 (D.C.

Cir. 1978)).  And the moving party "bears the burden of establishing that the transfer of th[e]

action is proper."  <u>Greater Yellowstone Coal. v. Bosworth</u>, 180 F. Supp. 2d 124, 127 (D.D.C.

2001) (citation omitted).

As a threshold matter, a district court must determine that the proposed transferee court is

located "in a district where the action might have been brought."  <u>Fed. Housing Fin. Agency v.</u>

<u>First Tenn. Bank Nat'l Ass'n</u>, 856 F. Supp. 2d 186, 190 (D.D.C. 2012) (Walton, J.) (quoting

Montgomery v. STG Intern., Inc., 532 F. Supp. 2d 29, 32 (D.D.C. 2008)).  If so, then a district court

> considers both the private interests of the parties and the public interests of the courts[.]  The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses . . . , but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.  The public interest considerations include: (1) the transferee[] [court's] familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Shapiro, Lifschitz & Schram, P.C. v. Hazard, 24 F. Supp. 2d 66, 71 (D.D.C. 1998) (citation omitted).

## III.    ANALYSIS

There is no dispute that this case could have been brought in the Eastern District of Virginia, as the plaintiffs are residents of New York and all of the defendants reside in Virginia, Compl. ¶¶ 2–7, where the proposed transferee court, the Eastern District of Virginia, is located, see 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located.").[2] Accordingly, the issues for the Court to assess are therefore: (1) whether the defendants are estopped from seeking a venue change after filing a counterclaim in this district; if not, (2) whether the forum-selection clause in the Agreement requires this case to be transferred to the Eastern District of Virginia; and if not, (3) whether the defendants have satisfied their burden of showing that the balancing of the private and public interest factors of § 1404(a) weighs in favor

---

[2] Dumont has been domiciled in Virginia since 2004, see Defs.' Mot., Ex. B (Affidavit of Gregory Dumont ("Dumont Aff.")) ¶ 8, Yeager has been domiciled in Virginia since September 1995, see id., Ex. A (Affidavit of Martin J. A. Yeager ("Yeager Aff.")) ¶ 4, Mid-Atlantic is a Virginia Limited Liability Company registered with the Virginia State Bar, see id., Ex. B (Dumont Aff.) ¶ 5, and Land Carroll is a Virginia professional corporation that is registered with the Virginia State Bar, see id., Ex. A (Yeager Aff.) ¶ 6.

of transferring this case to the Eastern District of Virginia.

### A.  The Filing of a Counterclaim Does Not Prevent a Party from Seeking a Venue Change

The plaintiffs assert that the defendants "waived their ability to seek a transfer" by removing this case from Superior Court to this Court, and then filing their Counterclaim in the case, thereby "submit[ing] themselves to the jurisdiction of this Honorable Court."  Pls.' Opp'n at 3.  In response, the defendants argue that the filing of a compulsory counterclaim does not constitute a waiver of either jurisdiction or venue.  <u>See</u> Defs.' Reply at 4–6.

 "Unlike a motion to dismiss for improper venue under Rule 12(b)(3), a motion to transfer venue under [§] 1404(a) is not a 'defense' that must be raised by pre-answer motion or in a responsive pleading."  <u>Nicholas v. Vilsack</u>, 183 F. Supp. 3d 39, 42 (D.D.C. 2016) (citing 14D Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 3829 (4th ed.)). This is so because "the purpose of [§ 1404(a)] is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  <u>Intrepid Potash-New Mexico, LLC v. U.S. Dep't of Interior</u>, 669 F. Supp. 2d 88, 92 (D.D.C. 2009) (quoting <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964)).  Additionally, "[f]or a § 1404(a) motion, 'there is no claim that venue is improper . . . [and] a request to transfer [under § 1404(a)] [is not] waived by the [d]efendant if not raised prior to or in a responsive pleading.'" <u>Id.</u> (quoting <u>W. Watersheds Project v. Clarke</u>, Civil Action No. 03-1985(HHK), slip op. at *6 n.9 (D.D.C. July 28, 2004)).  Moreover, "a motion to transfer may be made at any time after the initiation of an action under [§] 1404(a)."  <u>Great Socialist People's Libyan Arab Jamahiriya v. Miski</u>, 496 F. Supp. 2d 137, 140 n.3 (D.D.C. 2007) (Walton, J.).

Here, the defendants did not waive their ability to seek a transfer of venue pursuant to § 1404(a) by filing a counterclaim after this case was removed to this Court in conjunction with

their answer to the plaintiffs' Complaint.  In their § 1404(a) motion, the defendants are not

claiming that venue is improper in this District, and in fact, have acknowledged that venue is

proper in this District.  See Notice of Removal (Mar. 23, 2016), ECF No. 1, ¶¶ 4–5 ("The United

States District Court for the District of Columbia has jurisdiction over this action pursuant to 28

U.S.C. § 1332(a), diversity jurisdiction. . . .  Pursuant to 28 U.S.C. § 1441(a), [the d]efendants

are entitled to remove this action to this Court because it is the district court embracing the place

where the action is currently pending.").  Rather, the defendants seek to transfer this case "[f]or

the convenience of [the] parties and witnesses, [and] in the interest of justice."  Defs.' P. & A. at

3 (citing § 1404(a)).  Accordingly, because the defendants move to transfer this case pursuant to

§ 1404(a), which they may do "at any time after the initiation of an action," Miski, 496 F. Supp.

2d at 140 n.3, their filing of a counterclaim in this District does not prohibit them from seeking a

transfer under § 1404(a).

### B.  The Agreement's Forum Selection Clause Does Not Modify the Court's § 1404(a) Analysis

The Agreement's forum-selection clause provides that the parties "hereby consent to the

jurisdiction of the courts of the Commonwealth of Virginia and to venue in the courts of the City

of Alexandria, Virginia for purposes of resolving any disputes between the parties."  Defs.' Mot.,

Ex. C (Agreement) ¶ 13.  The defendants argue that this case should be transferred to the Eastern

District of Virginia because the forum-selection clause in the Agreement should be given

mandatory effect, and because the plaintiffs "consented to personal jurisdiction and venue in

Virginia."  Defs.' P. & A. at 4.  In response, the plaintiffs contend that they are not bound by the

forum-selection clause of the Agreement because they never contracted to be parties to the

Agreement in their individual capacities.  Pls.' Opp'n at 4–5. The plaintiffs also argue that, even

assuming that they are bound by the terms of the Agreement, the forum-selection clause is

permissive and not binding because the clause lacks "language clearly establishing exclusive

jurisdiction and venue, to the exclusion of all others." Id. at 6 (citing Byrd v. Admiral Moving &

Storage, Inc., 355 F. Supp. 2d 234 (D.D.C. 2005)).

The Supreme Court has made clear that § 1404(a) "provides a mechanism for

enforcement of forum-selection clauses that point to a particular federal district." Atl. Marine

Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, __ U.S. __, __, 134 S. Ct. 568, 579

(2013). "And as the [Supreme] Court stated, '[w]hen the parties have agreed to a valid

forum-selection clause, a district court should ordinarily transfer the case to the forum specified

in that clause. . . . [O]nly under extraordinary circumstances unrelated to the convenience of the

parties should a § 1404(a) motion be denied.'" One on One Basketball, Inc. v. Glob. Payments

Direct, Inc., 38 F. Supp. 3d 44, 49 (D.D.C. 2014) (quoting Atl. Marine Constr., __ U.S. at __,

134 S. Ct. at 581). Furthermore, "[t]he non-movant bears the burden of demonstrating that such

extraordinary circumstances exist and must show 'why the court should not transfer the case to

the forum to which the parties agreed.'" McGowan v. Pierside Boatworks, Inc., __ F. Supp. 3d

__, __, No. 16-cv-00758 (APM), 2016 WL 6088268, at *1 (D.D.C. Oct. 17, 2016) (quoting Atl.

Marine Constr., __ U.S. at __, 134 S. Ct. at 582).

Here, the challenged forum-selection clause does not require the Court "to adjust [its]

usual § 1404(a) analysis," Atl. Marine Constr., __ U.S. at __, 134 S. Ct. at 581, because the

record does not show that the plaintiffs, in their individual capacities, contractually agreed to be

bound by the Agreement or the terms of its forum-selection clause. As the Court previously

noted, the parties dispute whether the plaintiffs are parties to the Agreement. See supra Part 1 at

3. However, the Agreement, which "may not be modified except by a writing signed by each

party," Defs.' Mot., Ex. C (Agreement) ¶ 15, is not signed by the plaintiffs in their individual

capacities, see id. (showing that the parties to the Agreement are La Femme Noire and Land Carroll), and despite the defendants' representation that the plaintiffs "orally requested that [the defendants] represent them in their individual capacity," see Defs.' Mot., Ex. B (Dumont Aff.) ¶ 9, the record is devoid of any documents executed by the plaintiffs that modify the Agreement to reflect their intent to be bound by the Agreement in their individual capacities as required by the Agreement.  Despite the absence of any such documentation, the defendants argue that "[w]hile Gasby may not have physically signed the Agreement, he agreed to its terms and authorized [his agent] to sign on his behalf."  Defs.' Reply at 2 (citing id., Ex. A (email correspondence dated February 21, 2013 ("February 21st Email")) at 1 ("Attached please find the signed agreement that I signed on behalf of Dan Gasby.").  But, this email correspondence occurred shortly after Smith and Gasby, acting on behalf of La Femme Noire, retained Land Carroll to represent La Femme Noire in the L and T matter, see Defs.' P. & A. at 2, and one month before the plaintiffs in that matter moved to add Smith and Gasby as individual defendants, see Compl. ¶ 20.  Additionally, Gasby has submitted an affidavit attesting that he "did not sign the [ ] Agreement identified by [the d]efendants," nor did he "orally request, either on [his] behalf or on behalf of [ ] Smith, that [the d]efendants represent [the plaintiff's] interests under the same terms and conditions that [the defendants] had been purporting to represent La Femme Noir."  Pls.' Opp'n, Ex. A (Affidavit of Clarence A.D. Gasby) ¶¶ 5–6.  Thus, in reviewing the language found in the four corners of the Agreement, coupled with the additional evidence proffered by the parties, the Court finds that Smith and Gasby are not parties to the Agreement in their individual capacities.  Accordingly, the plaintiffs are not bound by the Agreement's forum-selection clause, and thus, that clause does not alter the Court's § 1404(a) analysis.

### C.  Section 1404(a)'s Balancing Test

Now that the Court has determined that the forum-selection clause in the Agreement does

not change the "calculus" of the Court's § 1404(a) analysis, Atl. Marine Constr., __ U.S. at __,

134 S. Ct. at 581, the Court turns to the private and public interest factors provided in § 1404(a).

### 1.  The Private Interest Factors

#### a.  The Parties' Choice of Forum and Where the Claims Arose

Generally, the plaintiff's choice of forum is given substantial deference, and therefore,

the movant requesting a transfer of venue "bears a heavy burden of establishing that [the]

plaintiffs' choice of forum is inappropriate." Thayer/Patricof Educ. Funding, L.L.C. v. Pryor

Res., Inc., 196 F. Supp. 2d 21, 31 (D.D.C. 2002) (citations omitted).  Additionally, district courts

are to defer to a plaintiff's choice of forum unless that forum has "no meaningful relationship to

the plaintiff's claims or to the parties," U.S. ex rel. Westrick v. Second Chance Body Armor,

Inc., 771 F. Supp. 2d 42, 47 (D.D.C. 2011), or if "most of the relevant events occurred

elsewhere," Aftab v. Gonzalez, 597 F. Supp. 2d 76, 80 (D.D.C. 2009) (quoting Hunter v.

Johanns, 517 F. Supp. 2d 340, 344 (D.D.C. 2007)).

Here, the Court finds that the plaintiffs' choice of forum is entitled to deference because

there is a substantial nexus between this District and the factual circumstances underlying the

plaintiffs' legal malpractice allegations.  The defendants devote the crux of their argument to the

forum-selection clause in the Agreement.  Defs.' Reply at 6–7.  However, as the Court

previously concluded, the Agreement's forum-selection clause has no bearing on its § 1404(a)

analysis.  See supra Part III.B.  What is compelling is that the plaintiffs' legal malpractice claim

stems from the defendants' alleged "acts or omissions made in the Landlord Tenant Branch of

the Superior Court."  Pls.' Opp'n at 9; see also Defs.' P. & A. at 6 (noting that "the underlying

dispute involves a landlord-tenant action in [ ] Superior Court").  Consequently, because the factual circumstances surrounding the plaintiffs' legal malpractice claim arose in this District, and because the defendants have not carried their burden of demonstrating that the plaintiffs' choice of forum is unsuitable, the Court finds that "the location where the claims arose outweighs the [defendants'] choice of forum and therefore weighs in favor of [not] transferring this case." United States v. Quicken Loans, Inc., __ F. Supp. 3d __, __, No. 15-613 (RBW), 2016 WL 6838186, at *4 (D.D.C. Nov. 18, 2016) (Walton, J.).

### b.  The Convenience of the Parties and Witnesses and the Ease of Access to Sources of Proof

The defendants argue that transferring this case to the Eastern District of Virginia would promote convenience because (1) "[a]ll of the individual defendants live and work in Virginia, and the law firm defendants are Virginia businesses with their headquarters in Virginia"; (2) as "the plaintiffs reside in New York, the Eastern District of Virginia is no more inconvenient to them than [this District]," Defs.' P. & A. at 5; and (3) "the witnesses and documents relevant in this legal malpractice case are mainly located outside of [this District]," id. at 6.  In response, the plaintiffs contend that transferring the case "will merely allow the [d]efendants the convenience of a shorter drive to the courthouse[, which] will then result in a longer drive for [the p]laintiffs, as they will have to drive out of the District of Columbia to the City of Alexandria."  Pls.' Opp'n at 12.

"Unless all parties reside in the selected jurisdiction, any litigation will be more expensive for some than for others."  Kotan v. Pizza Outlet, Inc., 400 F. Supp. 2d 44, 50 (D.D.C. 2005) (quoting Moses v. Bus. Card Express, Inc., 929 F.2d 1131, 1139 (6th Cir. 1991)).  Therefore, "for this factor to weigh in favor of transfer, litigating in the transferee district must

not merely shift inconvenience to the plaintiffs, but rather should lead to an overall increase in convenience for the parties." U.S. ex rel. Westrick, 771 F. Supp. 2d at 48.

The defendants have not demonstrated that transferring the case to the Eastern District of Virginia "will lead to a net increase in convenience for all parties." Id.  While it is true that the defendants either reside or have their principal offices in Virginia and the majority of the legal work conducted in the underlying L and T matter may have occurred in Virginia, the convenience the defendants seek by transferring this case from this District to the Eastern District of Virginia is minimal and benefits only them.  Other than the defendants and some other representatives who participated in the L and T matter, the plaintiffs and the other "potential witnesses will be required to travel from either New York or some other location outside the City of Alexandria."  Pls.' Opp'n at 13 (noting that "the [p]laintiffs will likely need to call non-party witnesses located within the District of Columbia as this matter relates to a case litigated in the District of Columbia that relate[s] to premises leased in the District of Columbia"). Consequently, transferring the case to the Eastern District of Virginia will only "shift inconvenience to the plaintiffs." U.S. ex rel. Westrick, 771 F. Supp. 2d at 48.  Therefore, because the defendants "have not shown that transferring this case will result in more than marginal relief," id., and because this District is a more convenient forum for the plaintiffs and many of the witnesses, this factor weighs against transferring this case to the Eastern District of Virginia.

### 2.  The Public Interest Factors

#### a.  The Relative Congestion of the Transferee and Transferor Courts

The defendants contend that their "transfer request is not solely due to the convenience for parties and witnesses, or to obtain a procedural advantage, [but that] they also seek a speedy

12

resolution to the litigation." Defs.' Reply at 7 (footnote omitted). In response, the plaintiffs

assert that the number of filings in this District and in the Eastern District of Virginia "are

arguably comparable" "[g]iven their reasonably close geographic proximity," and thus "the

balance of congestion . . . remains equal." Pls.' Opp'n at 11.

       "In this [D]istrict, potential speed of resolution is examined by comparing the median

filing times to disposition in the courts at issue." Fed. Housing Fin. Agency, 856 F. Supp. 2d at

194 (quoting Spaeth v. Mich. State Univ. Coll. of Law, 845 F. Supp. 2d 48, 60 (D.D.C. 2012)).

According to the latest statistics concerning federal judicial caseloads, the median

filing-to-disposition period in this District was 8.0 months, compared to 5.2 months in the

Eastern District of Virginia. U.S. District Courts–Combined Civil and Criminal Federal Court

Management Statistics at 2, 25 (June 30, 2016), available at

http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1.

Accordingly, the relative congestion of the Eastern District of Virginia weighs in favor of

transfer to that court, but only slightly, considering that the filing-to-disposition period is not that

significant.

### b.  The Local Interest in Deciding Local Controversies at Home

       The plaintiffs argue that this District "ha[s] a greater interest than Virginia . . . in

litigating [this] District of Columbia legal malpractice action" because their claims arise out of

the defendants' alleged "acts or omissions made in" Superior Court during the litigation of the L

and T matter. Pls.' Opp'n at 9. Similar to the majority of its arguments, the defendants direct

the Court to the Agreement's forum-selection clause as support for why venue in the Eastern

District of Virginia outweighs the local interest of this District to decide local controversies.

Defs.' Reply at 6. However, as the Court previously concluded, it owes the Agreement no

deference because the record does not demonstrate that the plaintiffs are parties to the Agreement, see supra Part III.B, and therefore, the argument has no bearing on the Court's analysis.  On the other hand, because the dispute in this case concerns the quality of legal representation provided in Superior Court by the defendants, who provided that representation based on membership in the District of Columbia Bar, the Court agrees that this District has a stronger local interest in this matter.  Therefore, this factor weighs against transferring this case to the Eastern District of Virginia.

## IV. CONCLUSION

In sum, the Court concludes that the defendants' filing of a counterclaim in conjunction with their response to the plaintiffs' Complaint does not bar them from moving to have this case transferred pursuant to § 1404(a), and that the plaintiffs are not parties to the forum-selection clause of the legal services Agreement which the defendants contend requires that this case be litigated in the state of Virginia.  Whether this case should be transferred is therefore governed by 28 U.S.C. § 1404(a), and the Court finds that the balance of factors outlined in § 1404(a) weighs in favor of the plaintiffs' position.  Thus, this District is deemed the more appropriate forum for the adjudication of this case.  Each of the private and public interest factors, with the exception of the relative congestion of both the transferee and transferor courts, weigh in favor of not transferring this case to the Eastern District of Virginia.  Accordingly, the Court denies the defendants' motion to transfer this case to the United States District Court for the Eastern District of Virginia.

**SO ORDERED** this 13th day of January, 2017.[3]

REGGIE B. WALTON
United States District Judge

---

[3] An Order consistent with this Memorandum Opinion is issued simultaneously with this opinion.