UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
BARBARA SMITH and                   )
CLARENCE GASBY,                     )
                                    )
            Plaintiffs,             )
    v.                              )   Civil Action No. 16-554 (RBW)
                                    )
                                    )
MARTIN J.A. YEAGER, et al.,         )
                                    )
            Defendants.             )
_____)

# MEMORANDUM OPINION

This matter comes before the Court on the Plaintiffs' Motion for Protective Order ("Pls.' Mot."), which requests that the Court issue a protective order prohibiting the deposition of Barbara Smith, one of the plaintiffs in this case. Pls.' Mot. at 1. Upon careful consideration of the parties' submissions,[1] the Court concludes for the reasons set forth below that it must deny the plaintiffs' motion.

## I.     BACKGROUND

Much of the factual background of this case has been previously set forth by the Court. See Smith v. Yeager, et al., 234 F. Supp. 3d 50, 53–55 (D.D.C. 2017) (Walton, J.). As noted in the Court's prior memorandum opinion, the underlying allegations are predicated on "a legal malpractice claim regarding the defendants' representation of the plaintiffs 'in a landlord-tenant matter . . . in the Superior Court of the District of Columbia.'" Id. at 53. And, in that memorandum opinion, the Court denied the defendants' motion to transfer this case to the

---
[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Opposition to Motion for Protective Order ("Defs.' Opp'n") and (2) the Plaintiffs' Reply to Defendants' Opposition to Motion for Protective Order ("Pls.' Reply").

Eastern District of Virginia.  See id. at 60.  Thereafter, the parties began discovery, see Order (Mar. 3, 2017), ECF No. 19, and now the parties dispute whether deposing Smith is appropriate, see generally Pls.' Mot.; Defs.' Opp'n.

Pertinent to the Court's resolution of the pending motion are the following circumstances surrounding the parties' discovery dispute.  "Smith has been diagnosed with Alzheimer's disease," and her "unfortunate condition is publicly known."  Pls.' Mot. at 1 (noting the book Smith published regarding her experiences confronting Alzheimer's disease).  Having learned of Smith's diagnosis, the defendants' counsel first requested Smith's medical records.  See Defs.' Opp'n at 1–2 (arguing that if Smith was not "competent at the time the suit was filed . . . then the suit was clearly filed in violation of [Federal] Rule [of Civil Procedure] 17 . . . and her claims should be dismissed").  Plaintiffs' counsel "advised the defense that he will not be calling . . . Smith as a witness at the trial of this matter given her medical condition."  Pls.' Mot. at 2.  Defense counsel then requested to depose Smith, see Defs.' Opp'n at 2; however, because counsel for the plaintiffs "insisted that . . . Smith is not competent to sit for a deposition," defense counsel "agreed to forego the deposition of . . . Smith if [the p]laintiffs would simply stipulate that [Smith] is not competent to sit for it," id.  After further "discussion[s] between the parties regarding . . . Smith's ability to sit for a deposition and provide relevant, responsive information" were unfruitful, Pls.' Mot. at 2, the defendants provided the plaintiffs with a notice of deposition, see id., Exhibit ("Ex.") B (Notice of Deposition dated June 12, 2017).  The parties engaged in further discussions regarding this issue and were unable to come to an agreement.  See id. at 3 ("[The d]efendants have . . . refused to withdraw . . . Smith's deposition notice and have instead required that [the p]laintiffs stipulate that . . . Smith is 'incompetent.'  Again, though, [the d]efendants have made it known to [the p]laintiffs that, should . . . Smith agree to

not appear at trial (and therefore not be seen by the jury), [the d]efendants will agree to withdraw their request to depose . . . Smith (without a stipulation of incompetence).").

"In light of the [d]efendants' refusal to withdraw the deposition notice . . . , the [p]laintiffs . . . retained counsel in New York State to assist with the appointment of a guardian for purposes of this litigation only." Id. Nonetheless, "[g]iven the pending guardianship process and . . . Smith's medical condition, [the p]laintiffs now seek [a p]rotective [o]rder" to prevent the defendants from deposing Smith. Id.

## II.     ANALYSIS

The plaintiffs argue that Smith "is not capable of meaningfully participating in the requested deposition, nor will said deposition provide the [d]efendants with any meaningful discovery related to the claims or defenses of this lawsuit" due to Smith's medical condition and diagnosis of Alzheimer's disease. Pls.' Mot. at 5 (emphasis in original). Thus, the "[p]laintiffs request that the [d]efendants be precluded from deposing . . . Smith until after the conclusion of the guardianship process and only if a guardian is not appointed. If a guardian is appointed, then [the p]laintiffs request that the deposition not be had all." Id. Alternatively, if the Court concludes that a protective order is not warranted, the plaintiffs request that the Court "order that [Mr.] Gasby," Smith's husband and the other plaintiff in this case, "be allowed to appear on [Smith's] behalf." Id. at 7. In response, the defendants contend that the plaintiffs have not satisfied their heavy burden of demonstrating good cause to warrant the issuance of a protective order, see Defs.' Opp'n at 3, and that Smith would provide relevant testimony to their defense of contributory negligence, which outweighs the plaintiffs' assertion of harm Smith would suffer if deposed, see id. at 4 ("At issue is the [p]laintiffs' contributory negligence in numerous incidents which involve things . . . Smith did or did not do, things she received and did not keep, over the

[twenty] years prior to the time she was sued by Union Station's landlord."). The Court will address the parties' arguments in turn.

**A. The Plaintiffs' Showing of Good Cause**

In relevant part, Federal Rule of Civil Procedure 26 provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," upon a motion from "[a] party or any person from whom discovery is sought . . . [coupled with] a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). "Although the Rule contains no specific reference to privacy or to other rights or interests that may be implicated, such matters are implicit in the broad purpose and language of the Rule." Peskoff v. Faber, 230 F.R.D. 25, 27 (D.D.C. 2005) (quoting Tavoulareas v. Wash. Post, 111 F.R.D. 653, 661 (D.D.C. 1986)).

The moving party "bears the burden of making the showing of good cause contemplated by the rule," and therefore, "must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." Alexander v. FBI, 186 F.R.D. 71, 75 (D.D.C. 1998). Additionally, "district courts assessing the existence of good cause must exercise their discretion in light of the relevant facts and circumstances of a particular case," Peskoff, 230 F.R.D. at 28 (quoting Tavoulareas, 111 F.R.D. at 658), and must "weigh[] the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial," Doe v. District of Columbia, 230 F.R.D. 47, 50 (D.D.C. 2005) (quoting Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001)). And, "in the case of a protective order related to deposition testimony, courts regard the complete prohibition of a deposition as an 'extraordinary measure[ ] which

4

should be resorted to only in rare occasions.'" Jennings, 201 F.R.D. at 275 (quoting Alexander, 186 F.R.D. at 75). Even so, "good cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense." Alexander, 186 F.R.D. at 75.

Here, the plaintiffs have failed to establish good cause or to make a showing of extraordinary circumstances sufficient to justify a court order prohibiting totally the taking of Smith's deposition. See Jennings, 201 F.R.D. at 275. In seeking a protective order, the plaintiffs have not offered any "evidence of specific harm that will result to [Smith] if she is made to testify." Id. (denying a motion for a protective order to preclude the deposition of a plaintiff suffering from dementia because the report by her psychologist submitted in support of her motion was too speculative and conclusory in nature). Rather, the plaintiffs largely rely on Smith's medical condition being "well documented to the public through numerous national news agencies . . . [and her] book detailing [her] struggles."[2] Pls.' Mot. at 4. And, although counsel for the plaintiffs acknowledges that he "is obviously not a medical professional, he has concluded that . . . Smith is likely not physically capable of sitting for the duration of a deposition, comprehending questions posed by [the d]efendants, or formulating legitimate responses thereto." Id. at 5. However, these non-medical conclusory statements without more, e.g., medical, psychological, or psychiatric evidence, do not meet the plaintiffs' heavy burden of demonstrating good cause sufficient to satisfy Rule 26(c) by a showing of specific facts indicating the potential harm Smith would endure without the entry of a protective order. See

---

[2] The parties dispute whether the Court can take judicial notice of Smith's medical diagnosis. See Pls.' Mot. at 4; Defs.' Opp'n at 3–4. However, as the defendants correctly note, see Defs.' Opp'n at 3, the Court need not decide at this juncture whether it may take judicial notice of Smith's medical diagnosis, as such determination would have no bearing on determining whether the plaintiffs have satisfied their burden of establishing good cause sufficient to warrant the issuance of a protective order prohibiting the defendants from deposing Smith.

5

Tolbert-Smith v. Bodman, 253 F.R.D. 2, 4–5 (D.D.C. 2008) (entering a protective order to preclude the plaintiff's supervisors from attending the plaintiff's deposition in light of a declaration by the plaintiff's psychiatrist specifically explaining how going forward with the deposition with the supervisors present would lead to "severe depressive stress possibly resulting in suicide").

Furthermore, the plaintiffs' conclusory representation of the harm Smith would suffer if deposed does not outweigh the defendants' "'significant interest' in preparing for trial." Doe, 230 F.R.D. at 50 (quoting Jennings, 201 F.R.D. at 275). As the Court previously mentioned, the defendants contend that at trial they will seek to present an affirmative defense of contributory negligence, among other defenses. See Defs.' Opp'n at 4. And, according to the defendants, Smith likely "possesses discoverable evidence that would demonstrate that she and her husband were personally liable to the landlord for the unpaid rent for various additional reasons, having nothing to do with whether [LaFemme Noire] was properly incorporated." Id. at 4 (contending that such discoverable information would assist in developing their contributory negligence defense). The plaintiffs did not respond to this assertion by the defendants in their reply in support of their motion to compel, see generally Pls.' Reply, and therefore, the Court will treat the defendants' contention as conceded by the plaintiffs, see, e.g., Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) (Walton, J.) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."), aff'd, 98 F. App'x 8 (D.C. Cir. 2004). In any event, the Court agrees with the defendants that Smith, as the President and stockholder of the restaurant, may have relevant information essential to their defense or defenses. See Defs.'

Opp'n at 5 (noting that Gasby's, Smith's husband, admission that he is unaware of what documents or information Smith received). And the "[d]efendants must be given an opportunity to test [Smith's] asserted lack of memory, and to develop, if possible, the facts and circumstances surrounding" Smith's involvement in the establishment of the restaurant and in the underlying landlord-tenant matter. Jennings, 201 F.R.D. at 276.

Despite these convincing reasons for the need to depose Smith, the plaintiffs argue that the "Court should be guided by the holding of Hometown Folks, LLC v. S & B Wilson, Inc., No. 1:06-cv-81, 2007 WL 2227817, at *1, 3 (E.D. Tenn. July 31, 2007)." Pls.' Mot. at 5; see also id. at 6 (asserting that "[t]he same good cause that justifies the entry of a protective order [in Hometown Folks] also justifies the entry of a protective order for [this case]"). In Hometown Folks, the plaintiff moved to compel one of the defendants, an eighty-three-year-old man who suffered from dementia and labile hypertension, to respond to written interrogatories and to produce documents regarding an alleged breach of contract concerning an agreement for the sale of certain Burger King restaurants to the plaintiff. See 2007 WL 2227817, at *3. In response to the motion to compel, the defendants moved for a protective order precluding the mentally ill defendant from having to respond to the plaintiff's written discovery requests. Id. at *6. "[C]onsidering as a whole all the evidence presented," the Hometown Folks court concluded that "requiring the [defendant] to answer the interrogatories propounded to him by the plaintiff would be a fruitless exercise." Id. at *8. This was the court's conclusion because the court reasoned that the defendant's "memory [was] completely unreliable and he [was] incapable of responding competently to the plaintiff's interrogatories or the plaintiff's requests to produce documents." Id.; see also id. ("While [the defendant] is able to continue to do certain routine tasks and can appear at times on the surface to be quite normal, his capacity to remember what was said or

7

what happened even a few minutes ago is significantly diminished."). The court also noted:

> To the extent [the defendant] has participated in the S & B Wilson business in the last two years, it is because his wife has brought him with her when she conducts business. He has been merely present; he himself has not made the decisions concerning the business beyond, perhaps, asking an assistant to order some routine supplies. . . . [The defendant's] medical records establish a long, gradual deterioration of his mental status beginning years before the parties discussed the sale of the defendants' Burger King restaurants to the plaintiff and increasing sharply within the last few years. . . . To the extent [the defendant] may have understood what he was doing when he signed the sales contract at issue . . . , he is not now, and has not been for at least the past year, capable of relating that understanding to someone else due to a seriously impaired memory and an inability to recognize where his memory is faulty.

Id. Consequently, the court denied the plaintiff's motion to compel and granted the defendants' motion for a protective order because "requiring an [eighty-three-]year-old man with severe dementia and labile hypertension to be subjected to even a scintilla of stress in order to personally respond under oath to interrogatories where no likely benefit exits constitute[d] embarrassment, oppression, and undue burden justifying a protective order under [Rule] 26(c)." Id.

Although the facts in Hometown Folks may be somewhat similar to the facts in this case (i.e., the mental condition of the defendant in Hometown Folks, and the purported mental condition of Smith), the Court is not persuaded that the same good cause found in Hometown Folks has been established here. Primarily, unlike the information provided to the court by the defendants in Hometown Folks, the plaintiffs here have not provided the Court with any of Smith's medical records indicating that Smith's "memory is completely unreliable and [that Smith] is incapable of" comprehending questions and being deposed. 2007 WL 2227817, at *8; see also Pls.' Mot. at 4 (relying solely on the information regarding Smith's medical diagnosis published on the Internet and in her book, but failing to explain whether Smith has no meaningful recollection of documents and events regarding the underlying litigation that would

8

be useful to the defendants in this litigation); id. at 6 (asserting that Smith "may not be able to" provide "relevant responsive information to [the d]efendants' questioning" (emphasis added)).[3] Also, unlike in Hometown Folks, the plaintiffs in this case have not provided evidence suggesting that Smith did not participate to any relevant extent in the establishment or operation of the plaintiffs' restaurant or in the underlying landlord-tenant matter that is the subject of this litigation. See 2007 WL 2227817, at *8 (noting that the defendant's participation in the business for the last two years was limited to him merely being present, as he did not have any involvement in the business other than "asking an assistant to order some routine supplies").[4] As the defendant's wife was substantially involved in the business and "was the only officer and stockholder of the company" other than the defendant, the court in Hometown Folks recognized that the defendant's wife would be a "more convenient, [and] less burdensome" source to respond to the written discovery. Id. (alteration in original). But, in this case, the defendants have already deposed Smith's husband, the other plaintiff in this case, and "he admitted [that] he [does not] know what documents or information [Smith] received, especially in her capacity as President of [the restaurant] and a stockholder, or where she might have kept them." Defs.' Opp'n at 5; see also Pls.' Reply at 3 (failing to refute the accuracy of these assertions). Thus, the

---

[3] In conjunction with the defendant's medical records provided to the court in Hometown Folks, the court held a hearing that heavily focused on the defendant's medical condition and whether he was capable of being deposed and responding to written discovery. See 2007 WL 2227817, at *2. The evidence submitted during the hearing included a deposition of the defendant's treating physician. See id. Thus, unlike this case, the court in Hometown Folks had more evidence, including medical evidence, as the basis for its determination that good cause existed prohibiting the defendant from responding to the discovery desired by the plaintiff.

[4] The plaintiffs argue that the "[d]efendants have expressly admitted that all communications in the underlying matter were made through . . . Gasby and that . . . Smith was otherwise 'unavailable.'" Pls.' Mot. at 6 (citing the defendants' response to the plaintiffs' interrogatories). It is unclear, however, as to exactly when Smith became "unavailable" in the underlying landlord-tenant matter. See Pls.' Mot., Ex. D (Defendant Gregory T. Dumont's Objections and Answers to Plaintiff Clarence D. Gasby's First Interrogatories) at 3 (providing merely that "once [Gasby] disclosed [Smith's medical condition] to [them], . . . all communication was through [Gasby]" (emphasis added)). Nonetheless, the Court agrees with the defendants that "relevant testimony [from Smith] is not limited to the period of time the [d]efendants were representing the [p]laintiffs." Defs.' Opp'n at 4.

defendants would not be able to obtain the relevant information from a more convenient source. Consequently, the plaintiffs' reliance on Hometown Folks as support for their position that good cause has been established in this case is to no avail.

In sum, the plaintiffs have not met their heavy burden of demonstrating good cause sufficient for the Court to issue a protective order precluding in its entirety the deposition of Smith. Accordingly, the Court will deny this component of the plaintiffs' motion.

**B. The Plaintiffs' Request for Gasby to Be Deposed in Place of Smith**

As the alternative to Smith being deposed, the plaintiffs request that the Court permit Gasby "to appear on [Smith's] behalf" if the Court "is not inclined to order that the deposition of [Smith] not be had." Pls.' Mot. at 7. As support for their position, the plaintiffs argue that Smith "has granted . . . Gasby the authority for him to speak on her behalf in [Smith's] requested deposition," id. at 8, because "Smith has executed a Durable General Power of Attorney that grants . . . Gasby the authority to act on her behalf in this litigation," id. at 7.[5] In response, the defendants, as the Court reiterates, contend that they have already deposed Gasby, and he has "admitted [that he does not] know what documents or other information [Smith] received, . . . or where she might have kept them." Defs.' Opp'n at 5. Therefore, the Court construes this argument as the defendants asserting that it would be a fruitless exercise to permit Gasby to testify at a deposition on behalf of Smith, because Gasby has already been deposed and was unable to provide relevant information that Smith may be able to provide. The Court agrees with

---

[5] In their opposition, the defendants did not address the plaintiffs' contention that Smith executed a valid and durable power of attorney that authorizes Gasby to act on her behalf, see generally Defs.' Opp'n, and the Court may therefore treat the plaintiffs' contention as conceded, see, e.g., Hopkins, 284 F. Supp. 2d at 25, aff'd, 98 F. App'x 8 (D.C. Cir. 2004). However, the Court need not consider the validity of the executed power of attorney, as it finds that consideration unnecessary to its determination that permitting Gasby to appear on Smith's behalf at her deposition would be inappropriate.

the defendants.[6]

As previously noted, the defendants have already deposed Gasby, during which they learned that Gasby is unable to provide them answers relevant to the questions they want to ask Smith. And, while the plaintiffs are correct that the defendants may not receive from Smith the answers they seek, see Pls.' Reply at 3 ("Though [the d]efendants may prefer, for instance, a 'No' as opposed to an 'I don't know' in response to a question, [the d]efendants do not have that choice."), the defendants nonetheless are entitled to depose Smith to see if she recalls any relevant information, which the Court notes is the essential purpose of a deposition. Furthermore, the plaintiffs' reliance on Miller v. Holzmann, 238 F.R.D. 111 (D.D.C. 2006), for the proposition that an agent of a party who has executed a valid power of attorney may appear or execute discovery requests on behalf of the party is also flawed. See Pls.' Mot. at 8. Holzmann is distinguishable from this case, primarily because the agent granted the authority from the executed power of attorney in Holzmann was not also a party in that case; whereas here, Gasby is a party in this case. In addition, the plaintiffs have not identified, nor could the Court locate, any authority for the proposition that such an agent (i.e., one who is also a party in the case) may substitute himself for the other party in the case. Accordingly, the Court will also deny this aspect of the plaintiffs' motion.[7]

---

[6] It is unclear as to whether the plaintiffs are seeking to have Gasby appointed as Smith's guardian for the purposes of this litigation. See Pls.' Reply at 5 (noting that they "have retained New York counsel to assist . . . Gasby [to] be appointed as guardian of . . . Smith"). To the extent that the plaintiffs are seeking to have Gasby appointed as Smith's guardian for the purpose of substituting Gasby for Smith in her deposition, the Court finds its analysis regarding the plaintiffs' unconvincing request to permit Gasby to appear on Smith's behalf applicable to that request as well.

[7] In their opposition, the defendants request that the Court compel the plaintiffs to produce Smith's "medical records and test results of the healthcare providers who have diagnosed and/or treated her for Alzheimers Disease, for a determination of whether . . . Smith was competent at the time the present action was filed." Defs.' Opp'n at 5. Federal Rule of Civil Procedure 37 outlines the procedures for a party requesting an order from the Court compelling discovery, see Fed. R. Civ. P. 37, and because the defendants' request does not comport with the requirements of Rule 37 or the requirements of this Court's local rules, the request must be denied.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that the plaintiffs have not met their heavy burden of demonstrating good cause sufficient for the Court to enter a protective order precluding the deposition of Smith.

**SO ORDERED** this 15th day of September, 2017.[8]

REGGIE B. WALTON<br>
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.